UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Joseph LAMBERT,
Defendant–Appellant.

No. 92–4146.

United States Court of Appeals,
Tenth Circuit.

June 14, 1993.

Joseph C. Fratto, Jr., Salt Lake City, UT, for defendant-appellant.

Wayne T. Dance, Asst. U.S. Atty. (David J. Jordan, U.S. Atty., with him, on the brief), Salt Lake City, UT, for plaintiff-appellee.

Before McKAY, Chief Judge, and LOGAN and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Robert Joseph Lambert appeals his conviction and sentence for bank robbery in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2. He contends that the court improperly admitted certain evidence at trial, and erred by adding two points in calculating his sentencing offense level for a threat made by another participant in the crime.

I

Viewed most favorably to the government, as required because of the jury verdict of conviction, the evidence showed the following. On January 8, 1992, defendant and Paul Douglas Keddington entered First Security Bank, a federally-insured bank in Sandy, Utah. While defendant stood in the center of the lobby, Keddington approached the teller and demanded money. Producing a plastic supermarket bag, Keddington told the teller: "Please put all of your money in the bag. You have ten seconds or the person behind me will shoot someone." II R. 30. At the time defendant had a plastic toy gun, painted black, in his jacket pocket, but did not brandish it. Rather, defendant stood with his arms crossed, his right hand concealed under the left side of his jacket. After the teller put $1214 in the bag Keddington and defendant fled.

After his arrest, Keddington agreed to plead guilty and testify against defendant. At defendant's trial, Keddington testified that defendant had moved in with him in December 1991; that just after Christmas they had had discussions concerning a bank robbery; that on January 3, he and defendant, while in a supermarket next door to First Security that had a branch of Zion's Bank in it, discussed potential targets for a robbery including First Security; and that defendant rejected the supermarket because it was too busy. Keddington testified that during their discussion defendant stated that he had seen a man in the Zion's branch bank within the store with "a lot of money in a bag," and that "he could take it," III R. 50; and that defendant said he had seen the man "deposit a large amount of money," and that he "could slam the guy and take the bag." *Id.* Defense counsel objected to this testimony, and subsequently moved for a mistrial on the ground that the evidence was highly prejudicial and not otherwise admissible. This motion was denied.

At sentencing, the government sought a two-level enhancement under U.S.S.G. § 2B3.1(b)(2)(F) for making an express threat of death. Defendant objected, noting that it was Keddington who had made the threat to the teller, and arguing that the government had presented no evidence to connect defendant to the threat. The district court disagreed, and applied the enhancement.

II

■ The district court's decisions not to grant a mistrial and to admit the challenged evidence are reviewed for abuse of discretion. *United States v. Easter,* 981 F.2d 1549, 1553–54 (10th Cir.1992). Defendant argues that Keddington's testimony concerning the conversation in the supermarket constituted impermissible character evidence inadmissible under Fed.R.Evid. 404(b); the government contends that the discussion was intrinsic to the planning for the charged offense, and not an extrinsic act covered by 404(b).

"Rule 404(b) only applies to evidence of acts extrinsic to the charged crime." *United States v. Pace,* 981 F.2d 1123, 1135 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993). "Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Williams,* 900 F.2d 823, 825 (5th Cir.1990) (internal quotations omitted). Such intrinsic "other act" evidence, although not excluded by 404(b), is still subject to the requirement

of Fed.R.Evid. 403 that its probative value is not substantially outweighed by the danger of unfair prejudice. *United States v. Fortenberry,* 971 F.2d 717, 721 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1020, 122 L.Ed.2d 166 (1993).

In this case, the discussions between defendant and Keddington occurred in the preliminary planning of the bank robbery; immediately after the complained-of remarks, defendant identified First Security to Keddington as a good target for a bank robbery. III R. 51. According to Keddington the two continued their discussions over the next several days, always focusing on First Security as the robbery target. When contemplating a robbery, inspection and selection of possible targets and discussion of the feasibility of robbing each is standard operating procedure. That the discussion complained of did not focus on First Security is not dispositive; defendant and Keddington were engaged in deciding how and when to undertake a robbery, and immediately thereafter they focused on First Security, the robbery for which defendant was convicted. The substance of the conversation was thus intrinsic to the crime charged, and its admission was not an abuse of discretion.[1]

### III

■■■ Defendant also objects to the imposition of a two-level sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(F) for the threat made by Keddington in the robbery. Keddington's statement—that the teller had ten seconds to put money in the bag or "the person behind me will shoot someone"—is considered an express threat of death under the guidelines. *See id.* comment. (n. 7). Factual findings made at sentencing are reviewed under a clearly erroneous standard, but the district court's legal interpretation of the guidelines is reviewed de novo. *United States v. Underwood,* 982 F.2d 426, 428 (10th Cir.1992); *United States v. Roberts,* 980 F.2d 645, 647 (10th Cir.1992).

The government argues that defendant is properly subject to the enhancement under U.S.S.G. § 1B1.3(a)(1)(A), because his presence aided and abetted Keddington's threat. That subsection provides that "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" may be considered in sentencing. In essence the government contends that as an aider and abettor defendant is as responsible for the acts of his companion in crime as if he had performed the act—made the threat—himself.

Aider and abettor liability requires specific intent. *United States v. Triplett,* 922 F.2d 1174, 1178 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2245, 114 L.Ed.2d 486 (1991).[2] As we read subsection (A) and the illustrative examples, defendant would be charged, for sentencing purposes, with the full amount of the money taken from the teller by Keddington, regardless of whether he could reasonably foresee what amount that would be, because procuring the money was the object of the crime defendant aided and abetted. The government would have us hold defendant responsible for the threat of death Keddington made, whether or not foreseeable, because a threat of force and violence or intimidation is an element of the bank robbery statute under which defendant was convicted. *See* 18 U.S.C. § 2113(a).

Although coercion and at least implied threats are necessarily involved in the bank robbery offense, express threats of death are not. Of course, if defendant intended that the death threat was to be made, he would then be responsible for it under subsection (A). The evidence of defendant's express intent in this regard, however, was at best equivocal. According to Keddington's testimony, defendant did discuss the need to make threats, but only generally: "[Defendant] talked about going in and going into the bank, scaring somebody and getting a lot of money," III R. 53; "[defendant] would go up, possibly grab the—somebody like the

---

1. Defendant also argues that the statements were inadmissible hearsay. However, under Fed. R.Evid. 801(d)(2)(A), a statement of a party-opponent offered against the party is exempted from the definition of hearsay.

2. Although *Triplett* construed the substantive aider and abettor statute, 18 U.S.C. § 2(a), we hold the same principles are applicable to aider and abettor liability under § 1B1.3.

manager, scare everybody," *id.* at 55. Witness David Martin Allsop also testified as follows:

> A. ... And [defendant] just told me he needed to leave the state just in case, but he had Paul [Keddington] go in the bank while he stood outside.
>
> Q. Did he tell you what he had Paul do inside the bank?
>
> A. Told the teller to get him the money because his friend [defendant] at the door had a gun.

IV R. 31. This evidence is insufficient to prove by a preponderance that defendant intended Keddington to make a death threat to the teller. Consequently, defendant's liability for the threat cannot attach through subsection (A).

Subsection (B) of U.S.S.G. § 1B1.3(a)(1), however, provides that "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken activity" are imputed to the defendant for sentencing purposes. Keddington's threat was clearly in furtherance of the bank robbery, in that it impressed upon the teller the seriousness of the situation and presumably hastened her compliance. It was also reasonably foreseeable on defendant's part. The commentary to § 1B1.3 gives the following example:

> For example, two defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim. The second defendant is accountable for the assault and injury to the victim (even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone) because the assaultive conduct was in furtherance of

the jointly undertaken criminal activity (the robbery) and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

*Id.* comment. (n. 2); [3] *see also id.* comment. (n. 2) (illustration (b)(1)) (assault and injury to bank teller during robbery foreseeable to getaway driver).

We conclude that Keddington's threat to the teller was reasonably foreseeable to defendant, and that the two-level enhancement for an express threat of death was appropriate under U.S.S.G. § 1B1.3(a)(1)(B).

AFFIRMED.

---

**3.** The language of § 1B1.3(a) and the commentary under which defendant was sentenced was somewhat different from the language quoted above. The amendment effective November 1, 1992, however, did not substantively alter the guideline, but merely "clarifies and more fully illustrates the operation of this guideline." U.S.S.G.App. C, amend. 439, at 264. Because the change in the guideline has no negative effect on defendant, its retroactive application presents no ex post facto problems. *United States v. Mondaine,* 956 F.2d 939, 942 (10th Cir.1992). As for the commentary, amendments of this nature are binding on the courts. *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993).