FILED
United States Court of Appeal
Tenth Circuit

January 25, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

VIRGIL HALL,

    Defendant-Appellant.

No. 11-4195
(D.C. No. 2:10-CR-1109-TS)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO** and **BALDOCK**, Circuit Judges, and **SKAVDAHL**,[**] District
Judge.[***]

_____

**I. Background**

On November 3, 2010, while traveling north on Interstate 15 near Cedar

City, Utah, Virgil Hall (hereinafter "Hall") was stopped by a Utah Highway Patrol

---

[*] This order and judgment is not binding precedent except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Scott W. Skavdahl, United States District Judge for the District of
Wyoming, sitting by designation.

[***] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).

Officer and found to be driving under the influence of alcohol. At the time, Hall was driving a 2008 Ford Explorer and accompanied by his co-defendant, Larry Woods (hereinafter "Woods"). During the course of the stop, a consensual search of the Ford Explorer was conducted and officers discovered four kilograms of cocaine concealed in the spare tire. On December 15, 2010, Hall and his passenger Woods were indicted by a federal grand jury on a single count of possession with intent to distribute 500 grams or more of cocaine. (Vol. I at 23-24.) Prior to trial, co-defendant Woods entered into a plea agreement and pled guilty, agreeing to testify against Hall at trial. (R. Vol. III at 69.) After a two-day jury trial, Hall was convicted on the single count of possession with intent to distribute cocaine.

Hall alleges a single error on appeal, contending the trial court erred in admitting inadmissible Rule 404(b) evidence of his prior interaction and drug deal with his passenger and co-defendant. In rejecting this argument, the district court determined that evidence of Hall's prior interaction and drug transaction with Woods was not 404(b) evidence, but rather inextricably intertwined with the charged offense. (Vol. I, Doc. 84 at 7-8.) The issue was addressed by the district court at two different times.

Prior to trial, the United States filed a "Notice of Government's Cautionary Notice of 404(b) Evidence". (Supp. Vol. I, Doc. 64 at 1.) This Notice summarized the anticipated testimony as follows:

In late 2009, Larry Woods (a likely government witness) first met defendant Virgil Hall. That meeting revolved around drug trafficking. Specifically, Woods gave Hall a significant amount of money (approximately $3,600) and a few days later Hall gave Woods a significant amount of cocaine base (approximately 14 grams). Between that exchange and the currently charged conduct (November 2010), Hall periodically called Woods asking whether Woods needed Hall for any drug-related business.

(*Id*. at 2.) The district court addressed the United States' Cautionary Notice in a written order prior to trial, finding the anticipated testimony was inextricably intertwined with the charged offense because it formed an integral and natural part of that witness's proffered account of the circumstances surrounding the offense alleged. (R. Vol. I at 39.) The district court concluded "[a]s such it would not be 404(b) evidence." (*Id.*) In the alternative, the district court found that even if it were, it would qualify for admission under Rule 404(b). (*Id*. at 40.) The district court directed defense counsel to proffer, outside the hearing of the jury, any specific objections to the admissibility of this evidence at the time it was offered by the government at trial. (*Id*.)

The United States called Woods as a witness at trial, and Hall's counsel objected to the admission of any evidence regarding how Woods and Hall met. (R. Vol. III, at 73, 75-76.) In response, the United States proffered that Woods would testify that in the fall of 2009, Hall was introduced to Woods by his brother, Terry Hall. (*Id*. at 75-76, 84.) This 2009 introduction was for the purpose of conducting a drug transaction. (*Id.* at 83, 88-89; 144-45.) During this drug transaction, Virgil Hall indicated to Woods that he would be willing to transport drugs for Woods in

the future, if such a need arose. This was how, in November of 2010, Hall came to be traveling with Woods and allegedly transporting drugs. (*Id*. at 76, 84.) After hearing and considering the parties' respective positions, the district court concluded:

> Counsel, it is a close call, but I do believe, based on the Court's understanding of the testimony to be elicited, that it is, in fact, inextricably intertwined with the offense in question here, and the Court will grant the request of the government to elicit that testimony, deny the motion of the defendant to exclude it.

(*Id*. at 85.) Thereafter, Woods testified as to the history of his relationship with Virgil Hall. Consistent with the United States' proffer, Woods testified he had met Hall through Hall's brother about a year prior to the charged conduct. (R. Vol. III at 89.) Woods testified that this initial meeting was for the purpose of making a drug deal. (*Id*. at 90.) After briefly describing the circumstances surrounding the initial meeting and drug deal, Woods testified he asked Hall if he could give him more cocaine in the future and whether Hall would be willing to make some drug runs for him in the future. (*Id*. at 91-92.) It was this initial meeting and discussion that prompted Woods to call Hall in approximately October 2010, after he was contacted by "a friend" in Las Vegas to transport cocaine from Las Vegas to St. Louis. (*Id*. at 92-94.) Using the cell phone number he had from their initial meeting, Woods contacted Hall and told Hall he had "something going" and he would get back with him. (*Id*. at 95.) Woods testified that approximately three weeks later, Hall called him back asking if the deal was on, to which Woods responded he was still working on it. (*Id*. at 95.) After confirming the drug

transport would occur with his Las Vegas friend, Woods contacted Hall and arranged for him to come to St. Louis. (*Id*. at 95-96.) Woods arranged to have Hall drive Woods' 2008 Ford Explorer to Las Vegas, where Woods met up with him. (*Id*. at 103-115.) After some delay, the drugs were obtained and placed inside the Explorer's spare tire. (*Id*. at 130.) Woods and Hall then left Las Vegas together en route to St. Louis. (*Id*. at 131-34.) Shortly after leaving Las Vegas, just outside St. George, Utah, Hall was pulled over for drunk driving. This stop ultimately lead to the discovery of the cocaine in the spare tire of the Ford Explorer. (*Id*. at 134, 139-40.)

At trial, the trial court allowed Mr. Woods to testify regarding his prior interactions with Virgil Hall but granted Hall's Motion in Limine, excluding the introduction of evidence of Hall's prior drug trafficking convictions. (R. Vol. I at 37-38.) The district court also excluded evidence of Woods' prior drug conviction. (R. Vol. III at 157-58.)

On June 9, 2011, the jury returned a verdict of guilty on the sole count of possession with intent to distribute. A judgment of conviction was entered on November 9, 2011. (R. Vol. I at 46-51.) Defendant's timely appeal followed. The single issue raised on appeal is a claim that the district court erred in admitting evidence of the prior drug transaction between Hall and co-defendant Woods, finding it inextricably intertwined with the current drug charge and not excludable under Fed. R. Evid. 404(b). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## II. Standard of Review

We apply an abuse of discretion standard of review to a district court's evidentiary rulings, considering the record as a whole. *U.S. v. Blechman*, 657 F.3d 1052, 1063 (10th Cir. 2011). This standard also applies to alleged errors under Fed. R. Evid. 404(b). *U.S. v. Irving*, 665 F.3d 1184, 1211 (10th Cir. 2011).

## III. Discussion

Rule 404(b) prohibits the introduction of evidence of a person's prior crime, wrong, or other act to prove that person's character, in order to show that the person acted in accordance with the character on a particular occasion. Fed. R. Evid. 404(b). However, Rule 404(b) "only applies to evidence of acts extrinsic to the charged crime." *Irving*, 665 F.3d at 1212 (citations omitted). "If the contested evidence is intrinsic to the charged crime, then Rule 404(b) is not even applicable." *Id.* However, intrinsic evidence remains subject to analysis under Rule 403 and may not be admitted if its probative value is substantially outweighed by the danger of unfair prejudice. *See United States v. Lambert*, 995 F.2d 1006, 1007-08 (10th Cir. 1993).

"Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *Lambert*, 995 F.2d at 1007. This Court has explained:

> Generally speaking, intrinsic evidence is that which is directly connected to the factual circumstances of the crime and provides contextual background information to the jury. Extrinsic evidence,

on the other hand, is extraneous and in not intimately connected or blended with the factual circumstances of the charged offense.

*U.S. v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) (internal quotation marks and citation omitted). When found to be intrinsic, the other act evidence is not subject to analysis under Rule 404(b). *Irving, supra* at 1212.

Hall contends that evidence of his prior interaction and drug deal with Woods was extrinsic to the charged crime and should have been subjected to analysis under Rule 404(b). In making this argument, Hall contends that the "inextricably intertwined" doctrine is so "vague and amorphous" that it is subject to abuse and overly broad application by trial courts and should not be allowed to circumvent the evaluation required under Rule 404(b). (App. Brief at 8.) Hall has not articulated how the prior interaction between Mr. Woods and Mr. Hall is extrinsic to the charged offense. Defendant fails to do so because this argument cannot be sustained based on the facts and controlling precedent.

In this case, at the time of the charged crime, Hall was traveling with Woods in Woods' Ford Explorer outside of St. George, Utah, in a vehicle transporting four kilograms of cocaine. Less than a year prior to this, Hall and Woods had met for the purpose of conducting a drug deal. During this initial encounter, Woods asked Hall if he could "make some runs for [Woods] to pick up some cocaine." (R. Vol. III at 90.) Hall said he would get back to Woods. (*Id*. at 91.) This initial interaction and drug deal is directly connected to the factual circumstances of the charged crime and provides contextual or background

information as to how it came to be that Woods contacted Hall to make the drug run in November of 2010. *See U.S. v. Richardson*, 764 F.2d 1514, 1521-22 (evidence that witness contacted defendant after being asked to obtain drugs because he had previously dealt with him before in buying drugs was intrinsic to the charged crimes and not subject to Rule 404(b) analysis); *U.S. v. Miranda*, 248 F.3d 434, 440-41 (5th Cir. 2001) (trial court did not error in admitting evidence of prior drug transaction between defendant and witness where evidence was admitted for the purpose of establishing and explaining connection between witness and defendant). Evidence of this prior interaction was necessary to provide the jury with the background and context of how Hall was involved with Woods, the nature of their relationship, and why he was riding in the Ford Explorer with Woods on November 3, 2010. The district court properly found evidence of Hall and Woods' prior relationship was intrinsic to the charged crime.

Even though this evidence was intrinsic to the charged offense, it still may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. We have interpreted "unfair prejudice" to mean an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001). In this case, the district court did not make an explicit finding under Rule 403. Although an explicit finding is preferable, the failure does not constitute error per se. *United States v. Wilson*, 107 F.3d 774, 782 (10th Cir. 1997). Moreover, a district court need not make an explicit Rule 403

ruling, so long as the determination as to prejudice is supported by the record. *United States v. Wenger*, 427 F.3d 840, 855 (10th Cir. 2005). In those cases where no explicit Rule 403 finding has been made by the district court, this Court may conduct a de novo balancing. *United States v. Lazcano-Villalobos*, 175 F.3d 838, 846 (10th Cir. 1999).

Woods' testimony concerning the prior meeting of Hall and the nature of that meeting was clearly probative of the relationship between Hall and Woods. It was also probative of his knowledge and involvement in the transportation of the cocaine. Hall's primary defense, as set forth in defense counsel's opening statement was "Virgil Hall was not a part of this transaction, this drug running. He didn't have anything to do with it." (R. Vol. III at 8.) Defense counsel also elicited testimony from one of the investigating officers (Agent Miles) that during his interview of Hall he claimed to have no knowledge that there were drugs in the spare tire. (*Id.* at 237-38.) Thus, evidence of the prior interaction between Woods and Hall was relevant and extremely probative of Hall's involvement and knowledge that drugs were being transported in the spare tire of Woods' Ford Explorer. While the prior drug deal between Hall and Woods was prejudicial in the wider sense, given the nature of Hall's defense, the probative value of evidence concerning his prior interaction and the nature of that interaction with Woods was not substantially outweighed by the danger of unfair prejudice or misleading the jury. Accordingly, the district court did not err in admitting this evidence under Fed. R. Evid. 403.

## IV. Conclusion

For the foregoing reasons, we AFFIRM Virgil Hall's conviction.

Entered for the Court

Scott W. Skavdahl
United States District Judge